ISAAC W. PANGBORN et al., appellants,

*v.*

CITIZENS BUILDING ASSOCIATION OF PLAINFIELD, respondent.

A director of a building association, who gave to the association an ordinary bond and mortgage for a loan, cannot set up as a defence to its foreclosure, that by a secret parol agreement between him and the other directors, the loan was to be and had been repaid and the mortgage satisfied by his shares of stock in the association having been fully paid up after the loan was made.

On appeal from the decree of the chancellor, founded on the following opinion of Vice-Chancellor Dodd:

The bill is to foreclose a mortgage dated September 18th, 1875, made by the defendants to the complainants, to secure the sum of $2,000, payable in one year, with interest at seven per cent. per annum, according to the condition of a bond between the same parties at the same time. The bond and mortgage are in the ordinary form.

The answer avers that the bond and mortgage have been paid, and ought to be given up and canceled; and in support of that averment, sets out that the complainants were organized as a corporation, under the general laws relating to such associations, and commenced business in February, 1868; that Pangborn then was, and has since continued to be, a member and the owner of ten shares of its stock; that he paid all installments on his stock up to February, 1878, when all payments to the asso ciation of installments on stock and interest on loans, ceased by order of the board; that in September, 1875, desiring to borrow

$2,000, he bought of the association, at a public auction, ten loans of $200 each, at a premium of two per cent., in pursuance of his privileges as a member, and received from the treasurer the sum of $1,960, and thereupon executed and delivered to the association the bond and mortgage in this suit; that the stock of the complainants consists of two series; that the ten shares owned by Pangborn are in the first series, and that the bond and mortgage so as aforesaid given by him are paid, because the said ten shares became paid up or closed in February, 1878, by the aforesaid action of the board.

The answer leaves it doubtful whether the shares in question did in fact become paid up; but, whether the shares were fully or partially paid, the claim of the defendant is that the bond and mortgage should be treated as represented by such shares, and not as securities for the payment of money, according to their terms. It sets up an agreement between the defendant and the board of directors of the complainants essentially different from that expressed in the bond and mortgage, namely, that after the defendant had purchased the ten loans, in September, 1875, he stated to the board of directors that he desired to secure the same by giving to the association an ordinary bond and mortgage, instead of the bond and mortgage usually given by stockholders who were borrowers, upon condition that the directors would give him the same rights, privileges and advantages that would accrue to him if he should give for said loans the bond and mortgage usually given by stockholders in such cases; that said board of directors accepted his proposition and agreed with him accordingly.

It is clear, I think, from the answer and the testimony, that the mortgage sought to be foreclosed must be treated according to its terms. The defendant was the owner of ten shares of stock, and, at the time of the giving of the mortgage, one of the company's directors. He bid a bonus of $40, and received the sum of $1,960. The constitution and by-laws (a copy of which is in evidence) required him to give a bond and mortgage for the full amount of the loan, and also to assign to the association, for every loan of $200, at least one share of stock as collateral security.

They further required that interest should be paid monthly on the sum loaned, at the rate of one-half of one per cent. per month.

To secure loans so made, a certain special form of mortgage is shown by the evidence to have been taken from the company's members, adapted to the requirements of the by-laws, expressing by its terms that the shares of stock have been assigned as collateral security, and that the mortgagor shall go on paying interest, fines and other proper impositions, until each share of stock shall have become entitled, under the constitution of the association, to $200. Instead of giving the customary mortgage and assigning his ten shares of stock, as other members were required to do, the defendant gave the bond and mortgage in question, and paid the interest for several years, half-yearly, down to about the time when the first series of shares are said to have closed.

The most favorable result for him of which the case admits, is to treat the loan as originally for the sum of $1,960, regarding the transaction as one between an ordinary borrower and lender. The intention which existed at the time of bidding the bonus to take the loan as a member, must be regarded as having been subsequently changed, so that no corrupt or usurious agreement was entered into, and cannot properly be charged.

The agreement set out in the answer between the defendant and the board of directors, by which the defendant was to be allowed to retain his stock, to give a bond and mortgage, which should be more convenient to the defendant by concealing the true nature of the transaction, was an objectionable one, and entitled on no grounds whatever to be enforced in equity. It was not expressed in any writing, and is, besides, not proved by the evidence. In addition to this, the defendant was one of the board of directors, with whom he says the agreement was made.

It is needless to point out the indefensible nature of an arrangement made in that way, in opposition to the requirements of the by-laws, not allowed to other members, and by which a special advantage was to be given to one of the trustees, without authority or just consideration.

The further defence of usury was hardly insisted on, nor the allowance of any set-off or credit for work. The only controverted matter was the alleged agreement in pursuance of which the mortgage was sought to be varied.

There should be a decree for the principal sum of $1,960, with interest and costs.

*Mr. Enos W. Runyon*, for appellants.

*Mr. Wm. B. Maxson*, for respondents.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by Vice-Chancellor Dodd in the foregoing opinion.